UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| CYBERXFORCE CORPORATION and DIGITALXFORCE CORPORATION, § § § | |
| Plaintiffs, § § | |
| v. § | Civil Action No. 4:23-cv-00452-O |
| § | |
| INSPIRA ENTERPRISE INDIA LIMITED and INSPIRA ENTERPRISE, INC., § § § § | |
| Defendants. § | |

## MEMORANDUM OPINION & ORDER

This is a trade secrets case about the misappropriation of disputed cybersecurity technology, replete with cross allegations of foul play. Before the Court is Third-Party Defendant's Motion to Compel Arbitration and Rule 12(b)(3) Motion to Dismiss Third-Party Complaint and Brief (ECF No. 25), filed May 18, 2023. Defendants filed their Response (ECF No. 41) on June 8, 2023. With both parties having had an opportunity to present their positions, and given the time-sensitive nature of this case, the Court now takes up the question of whether this case should be compelled to arbitration.

Having reviewed the briefing and applicable law, the Court determines that the Third-Party Defendant's Motion to Compel Arbitration and Rule 12(b)(3) Motion to Dismiss Third-Party Complaint and Brief (ECF No. 25) should be **GRANTED in part** and **DEFERRED in part**. Specifically, all parties in this dispute should be **COMPELLED** to arbitration. Furthermore, the Court **DEFERS** judgment on the extent of this compulsion pending further briefing on the purported injunctive relief carveout to binding arbitration.

## I. BACKGROUND

There are multiple parties to this dispute. Defendant Inspira Enterprise India Limited ("Inspira India") is a cybersecurity firm based in India, and Defendant Inspira Enterprise, Inc. ("Inspira USA") is its United States based subsidiary.[1] Inspira USA hired Third-Party Defendant Lalit Ahluwalia as its CEO in April 2022, and he maintained his position until he was terminated under contested circumstances in April 2023.[2] During his tenure as the CEO of Inspira USA, Mr. Ahluwalia formed Plaintiff CyberXForce Corporation ("CyberXForce"), and two days after his termination from Inspira USA, Mr. Ahluwalia formed Plaintiff DigitalXForce Corporation ("DigitalXForce").[3] Mr. Ahluwalia owns both Plaintiffs, and he is the CEO of both Plaintiffs.[4] Also during his time with Inspira USA, Mr. Ahluwalia formed Third-Party Defendant Inspire CyberX Excellence, Inc. ("Inspire CyberX") as a purportedly non-profit entity, and he serves as its owner and sole officer.[5]

The facts of this case are highly disputed. Mr. Ahluwalia contends that he is the creator and owner of a revolutionary new cybersecurity technology.[6] He asserts that Defendants hired him because of his unique skillset, but then terminated him under false pretenses in order to steal his cybertechnology.[7] On the contrary, Defendants argue that they created and own the disputed cybertechnology, not Mr. Ahluwalia.[8] They suggest that Mr. Ahluwalia tried to steal their cybertechnology and pass it off as his own, which is why they terminated him.[9]

---

[1] Defs.' Answer, Counterclaim, and Third-Party Complaint 10–11, ECF No. 20.
[2] Defs.' Resp. to Mot. to Compel Arbitration 2, ECF No. 41.
[3] Pls.' Compl. 8, 18, ECF No. 1.
[4] *Id*. at 8.
[5] Defs.' Answer, Counterclaim, and Third-Party Complaint 19, 27–28, ECF No. 20.
[6] Pls.' Compl. 9–11, ECF No. 1.
[7] *Id*. at 12–13, 18.
[8] Defs.' Answer, Counterclaim, and Third-Party Complaint 11–13, ECF No. 20.
[9] *Id*. at 17–24.

Despite the many factual disputes in this case, the parties agree on most of the issues relevant to arbitration. They agree that Mr. Ahluwalia was employed by Inspira USA, and they agree that his work was wholly subject to an employment agreement (the "Agreement").[10] They also agree that the Agreement contains the following arbitration provision:

> **13. Arbitration.** Any dispute or claim between you and the Company concerning or arising from this Agreement or in any way arising out of your employment or the termination of your employment will be submitted to binding arbitration administered by JAMS pursuant to its Employment Arbitration Rules & Procedures and subject to JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness. Any such arbitration will be held within the State of Delaware and any judgment on any Award may be entered in any court having jurisdiction.[11]

Additionally, they agree that Mr. Ahluwalia and Inspira USA are currently—and properly—engaged in an ongoing arbitration regarding the circumstances of his employment and termination.[12]

Two further sections of the Agreement are relevant. Specifically, Defendants note that the Agreement contains the following provision:

> 5. Employee understands and acknowledges that any disclosure or misappropriation of any of the Confidential Information in violation of this Agreement may cause the Company irreparable harm that may not be adequately compensated by damages and, therefore, agree that the Company shall be entitled to injunctive relief preventing or limiting the disclosure of any of the Company's Confidential Information. Nothing contained herein will be construed as prohibiting the Company from pursuing any other remedies otherwise available to it, at law or in equity, including the recovery of damages from the breaching party or any third party.[13]

Similarly, Defendants also cite the following parallel provision of the Agreement:

> 5. Employee expressly acknowledge that any breach or threatened breach of any of the terms and/or conditions set forth in this Agreement may result in substantial, continuing, and irreparable injury to the Company. Therefore, Employee hereby agrees that, in addition to any other remedy that may be available to the Company,

---

[10] Defs.' Resp. to Mot. to Arbitrate 2–3, ECF No. 41 (summarizing the record).
[11] *Id*. at 4.
[12] *Id*. at 2.
[13] *Id*. at 5.

> the Company may be entitled to injunctive relief, specific performance, or other equitable relief by a court of appropriate jurisdiction in the event of any breach or threatened breach of the terms of this Agreement. The Company's waiver or failure to enforce the terms of this Agreement or any similar agreement in any one instance will not constitute a waiver of its rights hereunder with respect to other violations of this Agreement.[14]

Defendants contend these provisions collectively serve as a carveout to the Agreement's arbitration clause that allows this Court to award injunctive relief in this matter.[15] Third-Party Defendants have yet to reply on this point.

## II. LEGAL STANDARDS

The Federal Arbitration Act ("FAA") permits a party to move to compel arbitration when a party to a valid arbitration agreement refuses to arbitrate. *Am. Bankers Ins. Co. of Fla. v. Inman*, 436 F.3d 490, 493 (5th Cir. 2006) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991)); *see also* 9 U.S.C. § 4. When ruling on a motion to compel, courts must determine if the dispute is arbitrable. *Papalote Creek II, L.L.C., v. Lower Colorado River Auth.*, 918 F.3d 450, 454 (5th Cir. 2019). The Fifth Circuit holds that this endeavor requires the trial court to decide: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Gross v. GGNSC Southaven, L.L.C.*, 817 F.3d 169, 176 (5th Cir. 2016) (quoting *Tittle v. Enron Corp.*, 463 F.3d 410, 418–19 (5th Cir. 2006)). If an arbitrable dispute exists, the FAA mandates that the Court shall direct parties to proceed to arbitration on issues as to which an arbitration agreement exists. *See* 9 U.S.C. §§ 3, 4.

---

[14] *Id.*
[15] *Id.* at 7–9.

## III. ANALYSIS

Although the parties generally agree about the validity and scope of the arbitration clause in the Agreement, they disagree over whether the Agreement should cover nonsignatories and whether the extent of the arbitration clause in the Agreement is limited by a carveout for injunctive relief. The Court addresses each issue in turn, beginning with the core arbitration analysis, then considering the Agreement's application to nonsignatories and the potential carveout for injunctive relief.

**1. The Arbitration Clause in the Agreement is Valid and Has a Broad Scope.**

The first step of an arbitration inquiry is to assess whether the alleged arbitration agreement is valid. *See, e.g.*, *Kubala v. Supreme Prod. Servs., Inc*., 830 F.3d 199, 201 (5th Cir. 2016). Here, the parties agree that the Agreement between Inspira USA and Mr. Ahluwalia is valid.[16] Thus, the Court proceeds directly to the second step of the arbitration inquiry and evaluates the scope of the Agreement. *See, e.g.*, *Kubala*, 830 F.3d at 201. Once again, the parties agree that the scope of the Agreement is broad enough to cover the entire business relationship of Inspira USA and Mr. Ahluwalia.[17] And even if the parties did not agree on these points, the Court would find that the Agreement contains a valid and broad arbitration clause due to the presence of all requisite elements of contract formation, the sophistication of the parties, and the expansive language used in the Agreement itself. Since the arbitration clause in the Agreement is valid and broadly worded, the Court finds that Inspira USA and Mr. Ahluwalia are bound to arbitrate their dispute as Agreement signatories.

---

[16] Third-Party Defs.' Mot. to Arbitrate 5–7, ECF No. 25; Defs.' Resp. to Mot. to Arbitrate 4, ECF No. 41.
[17] Third-Party Defs.' Mot. to Arbitrate 7–13, ECF No. 25; Defs.' Resp. to Mot. to Arbitrate 4, ECF No. 41.

Importantly, this finding is neither dependent upon, nor disrupted by, any injunctive relief carveout in the Agreement. Looking to the text of the parties' contract, the Agreement specifies that "the Company may be entitled to injunctive relief," but that such relief operates "in addition to any other remedy that may be available to the Company."[18] This plain language in the Agreement clearly states that the possibility of injunctive relief does not limit the arbitrability of any dispute between the parties. Instead, any injunctive relief contemplated by the Agreement is meant to function as an additional remedy on top of any relief that could—and indeed should—be secured through arbitration.

2. **All the Parties are Subject to the Arbitration Clause of the Agreement.**

The parties disagree over which nonsignatories to the Agreement—if any—are subject to the arbitration provision of the Agreement. Mr. Ahluwalia argues that the scope of the Agreement also encompasses his relationship with nonsignatory Inspira India, but not his own companies.[19] Conversely, Defendants argue that Mr. Ahluwalia's companies—CyberXForce, Inspire CyberX, and DigitalXForce—should all be compelled to arbitration, but not Inspira India.[20] Each side references various equitable doctrines, such as alter egos, direct benefits estoppel, and unclean hands, to support their respective arguments.

"[B]ackground principles of state contract law, when relevant, allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." *Crawford Pro. Drugs, Inc. v. CVS Caremark Corp*., 748 F.3d 249, 257 (5th Cir. 2014) (cleaned up) (quoting *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009)). "Accordingly, whenever

---

[18] Defs.' Resp. to Mot. to Arbitrate 5, ECF No. 41.
[19] Third-Party Defs.' Mot. to Arbitrate 11–13, ECF No. 25.
[20] Defs.' Resp. to Mot. to Arbitrate 11–12, ECF No. 41.

the relevant state law would make a contract to arbitrate a particular dispute enforceable by a nonsignatory, that nonsignatory is entitled to request and obtain a stay under § 3 [of the FAA] and an order to compel arbitration under § 4 [of the FAA] because that dispute is 'referable to arbitration under an agreement in writing.'" *Crawford*, 748 F.3d 249, 257 (5th Cir. 2014) (quoting *Arthur Andersen*, 556 U.S. at 630–32).

The Agreement is governed by Delaware law.[21] Delaware law permits the use of equitable estoppel when construing arbitration provisions. *See, e.g.*, Michael Rosenhouse, Annotation, *Application of Equitable Estoppel to Compel Arbitration By or Against Nonsignatory—State Cases*, 22 A.L.R.6th 387 (originally published in 2007) (collecting cases); *Binding Nonsignatories to Arbitration—Beware of Foot in Door*, 127 AM. JUR. *Trials* 107 (originally published in 2012) (same). "In general, equitable estoppel is available 'when a party by his conduct intentionally or unintentionally leads another, in reliance upon that conduct, to change position to his detriment.'" *Ocean Bay Mart, Inc. v. City of Rehoboth Beach Delaware*, 285 A.3d 125, 142 (Del. 2022) (quoting *Wilson v. American Ins. Co.*, 209 A.2d 902, 903–04 (Del. 1965)), *reargument denied* (Nov. 21, 2022). And importantly, "well-established" principles of Delaware law allow an arbitration clause to be enforced by, or against, a nonsignatory through equitable estoppel. *Ishimaru v. Fung*, No. CIV.A. 929, 2005 WL 2899680, at *18 (Del. Ch. Oct. 26, 2005) ("[E]quitable estoppel may even operate to bind a non-signatory to an arbitration clause to arbitrate with a signatory.")

> One Delaware court described two general situations where equitable estoppel applies:
>
> First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory. When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written

---

[21] Third-Party Defs.' Mot. to Arbitrate 6, ECF No. 25; Defs.' Resp. to Mot. to Arbitrate 3, ECF No. 41.

agreement, and arbitration is appropriate. Second, application of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract. Otherwise the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.

*Wilcox & Fetzer, Ltd. v. Corbett & Wilcox*, No. CIV.A. 2037-N, 2006 WL 2473665, at *4–5 (Del. Ch. Aug. 22, 2006) (cleaned up) (quoting *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000)). Another Delaware court recently noted, "A non-signatory can be bound to a forum selection provision under principles of equitable estoppel if the non-signatory has accepted a *direct benefit* under the agreement. 'The doctrine of equitable estoppel prevents the non-signatory from accepting the benefits of the agreement without also accepting its burdens.'" *Fairstead Cap. Mgmt. LLC v. Blodgett*, 288 A.3d 729, 755 (Del. Ch. 2023) (emphasis added) (quoting *Fla. Chem. Co., LLC v. Flotek Indus., Inc.*, 262 A.3d 1066, 1074 (Del. Ch. 2021)).

Here, all parties contend that the misappropriation of the disputed cybertechnology occurred during Mr. Ahluwalia's employment as CEO of Inspira USA. To be fair, the parties disagree as to which individuals or entities perpetrated the misappropriation, and all parties have allegedly suffered harms in the weeks following Mr. Ahluwalia's termination that persist to this day. Nevertheless, every claim raised by, or against, a nonsignatory arises from that critical period when Mr. Ahluwalia was both employed by Inspira USA and subject to the Agreement.[22] In this way, each claim at issue in this dispute depends upon the Agreement in some way. This alone would warrant the application of equitable estoppel.

Delaware courts have also taken issue with parties attempting to "have it both ways by attributing to a non-signatory the duties of a contract signatory for purposes of pressing claims but

---

[22] *See generally* Pls.' Compl., ECF No. 1; Defs.' Answer, Counterclaim, and Third-Party Complaint, ECF No. 20.

denying the non-signatory the right to invoke the arbitration clause." *Ishimaru*, 2005 WL 2899680, at *18. This concern is especially relevant when parties attempt to seek an advantage through manipulation of corporate forms. Discussing these issues, one court wrote:

> In this case, it was foreseeable when the parties entered into the Employment Agreement that [the principals] would be forming additional entities, which they controlled, and that [the defendant] would be providing services to those controlled entities. Admittedly, those entities did not yet exist, but it was foreseeable that they would be formed. The Employment Agreement specifically contemplated that outcome. It was also foreseeable that the Employment Arbitration Agreement would extend to those entities for purposes of disputes falling within its scope. *Otherwise, it would be easy to bypass the Employment Arbitration Agreement by having one of the new entities sue*.

*Fairstead*, 288 A.3d at 756 (emphasis added). Another court stated, "[E]quitable estoppel is more appropriate [than veil piercing] because it is [Plaintiff] who is simultaneously arguing that the separate corporate existence of [Defendant's subsidiary] has no dignity (when that is critical to the vitality of the merits of her [claim]) and that the separate corporate existence of [Defendant's subsidiary] must be recognized and respected (when that aids her in refusing to arbitrate with [Defendant])." *Ishimaru*, 2005 WL 2899680, at *18.

In this matter, all parties, including nonsignatories, are closely related to either Mr. Ahluwalia or Inspira USA. Inspira India created Inspira USA as its subsidiary to promote its business interests in the United States.[23] Likewise, during the course of his employment with Inspira USA, Mr. Ahluwalia created CyberXForce and Inspire CyberX to promote his professional and charitable endeavors, respectively.[24] He also created DigitalXForce two days after his termination, purportedly to advance his use of the disputed cybersecurity technology to the next level.[25] These complex corporate arrangements are to be expected with sophisticated parties, yet

---

[23] Defs.' Answer, Counterclaim, and Third-Party Complaint 10–11, ECF No. 20.
[24] Pls.' Compl. 8, 13–18, ECF No. 1; Defs.' Answer, Counterclaim, and Third-Party Complaint 19, ECF No. 20.
[25] Pls.' Compl. 8, ECF No. 1.

that cannot be an excuse to subvert or selectively enforce the Agreement as the previously cited caselaw suggests. As such, Delaware law favors the application of equitable estoppel in these circumstances.

For the aforementioned reasons, the nonsignatories who are parties to this case—Inspira India, CyberXForce, Inspire CyberX, and DigitalXForce—should be, and are, **COMPELLED** to arbitration pursuant to the terms of the Agreement between Mr. Ahluwalia and Inspira USA. This ruling is consistent with findings reached by other Delaware federal courts. *See, e.g.*, *Sanum Inv. Ltd. v. San Marco Cap. Partners LLC*, 263 F. Supp. 3d 491, 496 (D. Del. 2017) ("Where the parties to an arbitration clause unmistakably intend to arbitrate all controversies which might arise between them, their agreement should be applied to claims against agents or entities related to the signatories." (cleaned up)); *In re Fed.-Mogul Glob., Inc.*, 526 B.R. 567, 577 (D. Del. 2015) ("[A] party may be estopped from asserting that his lack of signature on a written contract precludes enforcement [of] a contractual provision when he had consistently maintained that other provisions of the contract should be enforced to benefit him.")

3. **The Court Requires Further Briefing on the Injunctive Relief Carveout in the Agreement.**

The Agreement contains two sections which appear to allow Inspira USA the option to seek injunctive relief from a court of competent jurisdiction as a remedy to an employee's breaches of the Agreement.[26] As discussed earlier in this Memorandum Opinion & Order, this carveout does not affect the overall arbitrability of the parties' dispute. At most, the carveout functions as an additional remedy available to Inspira USA on top of whatever relief arbitration might provide.

---

[26] Defs.' Resp. to Mot. to Compel Arbitration 5, ECF No. 41.

But as yet, this issue has not been fully briefed. Therefore, the Court **DEFERS** ruling on the impact of the injunctive relief carveout subject to further briefing from the parties.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** and **DEFERS in part** the Third-Party Defendant's Motion to Compel Arbitration and Rule 12(b)(3) Motion to Dismiss Third-Party Complaint and Brief (ECF No. 25). Specifically, all parties in this dispute are hereby **COMPELLED** to arbitration. Furthermore, the Court **DEFERS** judgment on the extent of this compulsion pending further briefing on the injunctive relief carveout in the Agreement.

**SO ORDERED** on this **14th day** of **June, 2023**.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**